**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEANNA KRATZERT, NEIL MOSHER, and JON KARAFFA, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiffs*,<br><br>*v.*<br><br>TARGET CORPORATION,<br><br>*Defendant.* | Civ. Action No.:<br>1:25-cv-1171 (AMN)(DJS)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Jeanna Kratzert, Neil Mosher, and Jon Karaffa, individually and on behalf of all others similarly situated, by their undersigned attorneys Katz Banks Kumin LLP, as and for their First Amended Class Action Complaint, allege as follows:

## INTRODUCTION

1. Defendant Target Corporation ("Target") is a retailer that employs thousands of workers across the United States in distribution centers, or warehouses, to support its online and in-person retail operations.

2. These warehouses are enormous industrial sites. In New York, Target operates two such warehouses in the towns of Wilton and Amsterdam, which are approximately 1.5 million and 1.8 million square feet, respectively.

3. Hourly employees of the warehouses are required to walk long distances—up to approximately half a mile—to and from their assigned departments, where they are required to clock in at the start of each shift and clock out at the end of each shift.

4. Though Target requires hourly employees to swipe their employee badges for security purposes at the entrance of the warehouse, Target refused to pay Plaintiffs Jeanna Kratzert,

Neil Mosher, Jon Karaffa, and thousands of other hourly-paid warehouse workers for the time they spent walking to and from their assigned time clocks.

5. In so doing, Target failed to pay Plaintiffs for all of their work time at their promised wage rate, and failed to pay them the state minimum wage for all hours worked, in violation of the New York Labor Law ("NYLL").[1]

6. Target also failed to pay Plaintiffs for time spent walking in the warehouse that went beyond forty hours in a workweek at the overtime premium rate, in violation of the NYLL.

7. In this day and age, there is no technological barrier to paying Plaintiffs and other employees for such time. Target already tracks the times Plaintiffs and other employees enter and, in some cases, leave the building, so it can readily calculate the time Plaintiffs and other employees spend walking to and from their assigned time clocks inside the warehouse. For each employee who is not paid for walking time, that time can add up to approximately $1,000 to $2,000 per year.

8. Considering that there are approximately 1,200 employees working at the Wilton warehouse, and approximately 800 working at the Amsterdam warehouse, this unpaid time adds up to more than two million dollars annually. That amounts to a massive wealth transfer from Target's New York warehouse workers—who generally earn between $39,000 and $57,000 a year—to Target, a corporation with a net worth estimated at over $43 billion.

9. Jeanna Kratzert, Neil Mosher, and Jon Karaffa ("Plaintiffs") bring this class action lawsuit against Target on behalf of themselves and other similarly situated hourly warehouse

---

[1] For the avoidance of doubt, Plaintiffs do not bring claims under the Fair Labor Standards Act (29 U.S.C. §§ 201-219), which was limited by the Portal-to-Portal Act (29 U.S.C. §§ 251-262). But the New York Labor Law requires payment for the time at issue in this case. Courts in other states have held that similar state wage laws require employers to pay workers for pre- and post-shift work time. *See, e.g.*, *In Re Amazon.Com Inc.*, 255 A.3d 191, 201 (Pa. 2021); *Frlekin v. Apple, Inc.*, 457 P.3d 526, 532-33 (Cal. 2020); *Roberts v. State,* 512 P.3d 1007, 1015-16 (Ariz. 2022).

employees, as Target failed to pay any of these workers for the time they spent walking inside the warehouse at the start and end of each shift.

**THE PARTIES**

10. Plaintiff Jeanna Kratzert is a resident of New York State who worked for Defendant at its Wilton, New York, warehouse—including as a packer and as a member of the inbound and outbound departments—from approximately April 2018 to November 2024.

11. Plaintiff Neil Mosher is a resident of New York State who currently works for Defendant at its Wilton, New York, warehouse as a warehouse worker in the shipping department. He previously worked for Defendant at its Wilton warehouse in the same role from approximately June 2002 to May 2005 before returning to work for Defendant in approximately June 2008.

12. Plaintiff Jon Karaffa is a resident of New York State who worked for Defendant at its Amsterdam, New York, warehouse—including as a warehouse worker in the inbound department—from approximately July 2017 to September 2025.

13. Target Corporation is a Minnesota corporation with its principal place of business located at 1000 Nicollet Mall in Minneapolis, Minnesota. As such, it is a citizen of Minnesota for diversity purposes.

14. Target operates two warehouses in New York State: 129 North Road in Wilton, New York, and 1800 Route 5 South in Amsterdam, New York.

15. As of February 1, 2025, Target operated 107 retail stores in New York State. Target Corp., *2024 Annual Report Target Corporation*, at 21, Item 2, https://corporate.target.com/getmedia/c23bca62-1790-47bd-ad0e-6971aee4f78d/2024-Annual-Report-Target-Corporation.pdf.

16. At all times relevant to this action, Target was an "employer" of Plaintiffs and similarly situated warehouse employees within the meaning of the NYLL.

17. At all times relevant to this action, Plaintiffs and similarly situated warehouse employees were non-exempt "employees" of Defendant as defined by the NYLL.

18. At all times relevant to this action, Defendant "employed" Plaintiffs and similarly situated warehouse employees within the meaning of the NYLL.

## JURISDICTION AND VENUE

19. The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332 (diversity), as Plaintiffs and Defendant are citizens of different states (New York and Minnesota, respectively), and Plaintiffs assert claims on behalf of themselves and hundreds (if not thousands) of individuals, claims which collectively amount to more than $75,000 in unpaid wages and liquidated damages, as well as attorneys' fees (recoverable as a matter of right under the NYLL).

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, as Plaintiffs Kratzert and Mosher worked throughout their employment at Target's warehouse in Wilton, New York (Saratoga County), and Plaintiff Karaffa worked throughout his employment at Target's warehouse in Amsterdam, New York (Montgomery County). Both of the warehouses where class members worked are located within this district.

## FACTUAL ALLEGATIONS

21. Target is a nationwide retailer selling "a wide assortment of general merchandise and food" both in stores and online. *See 2024 Annual Report Target Corporation* at 4.

22. Defendant maintains its retail operations by operating warehouses around the country. *See id.* at 6 ("Most merchandise is distributed to our stores through our network of

warehouses"); *id.* at 21 (reporting that Target operates 66 total supply chain facilities in the US, which includes "warehouses, sortation centers, and other facilities with a total of 68.5 million square feet").

23. Target operates two warehouses in New York: one in Wilton, New York, at 129 North Road, and one in Amsterdam, New York, at 1800 Route 5 South.

24. The Wilton warehouse is estimated to be over 1.5 million square feet. *See* Albany Business Review, *Largest Distribution Centers in the Albany Area* (Apr. 5, 2024), https://www.bizjournals.com/albany/subscriber-only/2024/04/05/largest-distribution-centers-in-the-albany-area.html.

25. The Amsterdam warehouse is estimated to be over 1.8 million square feet. *Id.*

26. At the warehouses, workers are responsible for, among other things, unpacking and moving inventory, sorting inventory for shipping to specific New York stores based on the stores' needs, and packing inventory for shipping.

27. Plaintiffs' work, and the work of other Target warehouse employees, is intense and physically demanding. Workers must be able to lift and carry merchandise weighing 35-60 pounds during their shifts. Warehouse employees regularly carry up to 2,000 cartons of merchandise daily.

28. Warehouse workers are also trained to operate powered equipment including but not limited to pallet riders, scissor lifts, and sit down & stand up forklifts, and work at heights of up to 40 feet.

29. Defendant employs individuals who, in the last seven years, have worked in the Target warehouses in New York State, including in the job titles "warehouse worker" and "warehouse associate," and have been paid hourly wages.

30. From approximately April 2018 until approximately November 29, 2024, Defendant employed Plaintiff Kratzert at its Wilton warehouse, as a warehouse worker in different departments, and paid her an hourly wage.

31. From approximately June 2008 to present, Defendant has employed Plaintiff Mosher at its Wilton warehouse as a warehouse worker and paid him an hourly wage.

32. From approximately July 2017 until September 2025, Defendant employed Plaintiff Karaffa at its Amsterdam warehouse, as a warehouse worker primarily in the inbound department, and paid him an hourly wage. For the final few months of his employment, beginning around April or May of 2025, he worked in the "warehouse" department.

33. At the beginning of Plaintiffs' and each hourly warehouse employee's shift, Defendant required them to swipe in at the entrance to the warehouse.

34. After passing a security checkpoint staffed by security guards, Defendant then required Plaintiffs and other hourly warehouse employees to walk long distances within the warehouse to their assigned work locations.

35. Defendant required Plaintiffs and other hourly warehouse employees to "clock in" for payroll purposes at time clocks located at or near their assigned work location.

36. As a result, it was mandatory for Plaintiffs and other hourly warehouse employees to arrive at the warehouse before the start of the shift and walk long distances within the warehouse before their shift began.

37. If Plaintiffs and other hourly warehouse employees arrived at the entrance to the facility at the start of their shift, they were considered late for their shifts and penalized.

38. Plaintiff Kratzert estimates that her mandatory pre-shift walking time generally took approximately 8-10 minutes per day when she worked as a packer between April 2018 and February 2020.

39. Plaintiff Kratzert estimates that her pre-shift walking time was approximately the same (8-10 minutes per day) when she worked on the inbound team between October 2021 and April 2023, and approximately 3-4 minutes per day when she worked on the outbound team between March and September 2021.

40. Plaintiff Mosher estimates that his mandatory pre-shift walking time took and continues to take approximately 5-6 minutes per day.

41. Plaintiff Karaffa estimates that his mandatory pre-shift walking time took approximately 10-15 minutes per day when he worked in the inbound department.

42. Defendant did not pay Plaintiffs or other hourly warehouse employees for time spent walking long distances from the entrance of the warehouse to their assigned time clock before each shift.

43. At the end of each shift, Defendant required Plaintiffs and other hourly warehouse employees to "clock out" for payroll purposes at the time clock located closest to their assigned work location.

44. Defendant then required Plaintiffs and other hourly warehouse employees to walk back a long distance through the warehouse and pass back through the security checkpoint before leaving the warehouse.

45. Plaintiff Kratzert estimates that her mandatory post-shift walking time took approximately 8-10 minutes per day when she worked as a packer, and that it was approximately the same when she worked on the inbound team.

46. Plaintiff Kratzert also estimates that her mandatory post-shift walking time was 3-4 minutes per day when she worked on the outbound team.

47. Plaintiff Mosher estimates that his mandatory post-shift walking time took and continues to take approximately 5-6 minutes per day.

48. Plaintiff Karaffa estimates that his mandatory post-shift walking time took approximately 10-15 minutes per day when he worked in the inbound department.

49. Defendant did not pay Plaintiffs or other hourly warehouse employees for this time spent walking from their assigned time clock to the entrance of the warehouse after each shift.

50. For example, in the pay period ending July 19, 2025, Mr. Mosher was paid for 34.38 hours at his regular pay rate of $28.31. But he was not paid for approximately 20 to 24 minutes of mandatory walking time during that pay period, so he is owed wages for that mandatory walking time at his regular pay rate.

51. For example, in the pay period ending December 28, 2024, Mr. Karaffa was paid for 35.92 hours at his regular pay rate of $28.31. But he was not paid for approximately 20 minutes of mandatory walking time per day during that pay period, so he is owed wages for that mandatory walking time at his regular pay rate.

52. Defendants failed to provide accurate wage statements to Plaintiffs and other hourly warehouse employees, because those statements did not include the pre- and post-shift time they were required to be in the warehouse.

53. Plaintiff Kratzert would tell her supervisors that she was being required to spend time walking through the warehouse that she was not being paid for, but did not experience a change in policy.

54. When supervisors informed Plaintiff Kratzert that she did not have a right to be paid for her pre- and post-shift walking time under company policy, Plaintiff Kratzert did not know if she had legal recourse.

55. As a result of their inaccurate pay notices, Plaintiffs and other hourly warehouse employees were unable to ascertain how much time they had spent walking in the warehouse for which they were not paid, how much they should have been paid for that time, and accordingly, what portion of their wages Defendant had failed to pay.

56. Plaintiffs and other hourly warehouse employees are generally assigned to one of two shift schedules: three 12-hour shifts per week, or four 10-hour shifts per week.

57. Defendant periodically required Plaintiffs and other hourly warehouse employees to work overtime throughout the year.

58. For example, Plaintiff Mosher and other similarly situated hourly warehouse employees were required to work an additional 20 hours per week, each week, from approximately June 2024 to January 2025.

59. Defendant also regularly required Plaintiffs and other hourly warehouse employees to work overtime during Target's busy holiday and back-to-school shopping seasons.

60. Plaintiffs and other hourly warehouse employees were full-time employees who were often scheduled to work, and did work, 40 hours per week. As a result, during those weeks, the unpaid time that Defendant required them to spend walking to and from their assigned time clocks was time that was required to be compensated at the overtime premium rate.

61. Even where Plaintiffs otherwise worked more than 40 hours and were paid the overtime rate for such time, because Target did not pay them for mandatory walking time,

Plaintiffs were not paid for all their time worked more than 40 hours at the required overtime pay rate.

62. For example, in the pay period ending December 22, 2018, Ms. Kratzert was paid for 14.1 hours of overtime at a rate of $25.11 per hour. But she was not paid for the mandatory walking time during that pay period, so she is owed wages for that mandatory walking time at her overtime pay rate.

63. As another example, in the pay period ending August 2, 2025, Mr. Mosher was paid for 14.99 hours of overtime at a rate of $43.96 per hour. But he was not paid for approximately 30 to 36 minutes of mandatory walking time during that pay period, so he is owed wages for that mandatory walking time at his overtime pay rate.

64. In the pay period ending December 14, 2024, Mr. Karaffa was paid for approximately 5.8 hours of overtime at a rate of $44.19 per hour. But he was not paid for approximately 20 minutes of mandatory walking time per day during that pay period, so he is owed wages for that mandatory walking time at his overtime pay rate.

65. Plaintiffs and many other hourly warehouse workers at Target's warehouses were scheduled for more than 40 hours per week regularly, particularly during Target's busy holiday and back-to-school shopping seasons. Working such overtime hours was mandatory.

66. Plaintiffs and other hourly warehouse workers at Target's warehouses have also been monitored by security staff at a security checkpoint to ensure that they are only carrying personal belongings into and out of the warehouse in clear bags.

67. When passing through the security checkpoint before beginning their walks to their assigned work locations and then clocking in, and after clocking out and walking toward the

building exit, Plaintiffs and other hourly warehouse employees' bags were subject to security screening.

68. At times, including prior to the COVID-19 pandemic, security has also conducted "sporadic bag checks," during which every employee's bag would be inspected. Such checks resulted in long lines, where Plaintiffs and other hourly warehouse employees would be required to wait for several minutes before exiting the warehouse.[2]

**CLASS ACTION ALLEGATIONS ON BEHALF OF THE CLASS**

69. Plaintiffs bring their NYLL claims, the First through Fourth Causes of Action, on behalf of themselves and all other similarly situated individuals as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Plaintiffs assert claims on behalf of and seek to represent the following Class: "All hourly-paid warehouse employees in all job titles, including but not limited to 'warehouse associates' and 'warehouse workers' during all shifts, who worked for Defendant from January 10, 2019 through the date of final judgment in this matter."

70. The start date of January 10, 2019 accounts for the past six years of the NYLL statute of limitations, plus an additional 228 days due to the Governor of New York's executive orders tolling New York statutes of limitations during the COVID-19 pandemic. *See, e.g.*, *McLaughlin v. Snowlift, Inc.*, 214 A.D.3d 720, 721 (2023).

71. Excluded from the Class are the legal representatives, officers, directors, assigns, and successors of Target; any individual who at any time during the class period has had a controlling interest in Target; the Judge(s) to whom this case is assigned and any member of the

[2] Should discovery show that Plaintiffs and other hourly warehouse employees spent significant time waiting in security lines when entering and/or exiting the warehouse at other times during the relevant time period, Plaintiffs may amend this Complaint to supplement these allegations accordingly.

Judges' immediate family; and all persons who submit timely and otherwise proper requests for exclusion from the Class.

72. Plaintiffs reserve the right to amend and refine the class definition above or add classes and/or subclasses as litigation progresses.

73. *Numerosity*: The Class is so numerous that joinder of all Class members is impracticable. Although the precise number of putative Class members is currently unknown, Plaintiffs believe that the Class includes at least 3,000 members.

74. Upon information and belief, the Wilton warehouse employs up to approximately 1,500 employees during peak seasons.

75. The Amsterdam warehouse employs approximately 800 employees at any one time. *See, e.g.*, Montgomery County Business Development Center, *Target*, https://montgomerycountyworks.com/trusted-brands/target/ (accessed Aug. 18, 2025).

76. Plaintiffs estimate that at least 400 employees are assigned to the busiest shift at the Wilton warehouse, while approximately 160-180 employees are assigned to the least busy shift. Across the four shifts, they estimate approximately 1,200 employees work at the Wilton warehouse at any given time.

77. Plaintiffs are currently unaware of the identities of all of the employees who would be members of the Class, but this information is readily ascertainable from Defendant's records. Defendant should therefore be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who worked as hourly warehouse employees for Defendant from January 10, 2019, through the date this Complaint was filed.

78. *Commonality*: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members, including but not limited to:

a. What are and were the policies, practices, programs, procedures, and protocols of Defendant regarding the compensation of hourly warehouse employees;

b. Whether Target maintained a policy of not paying hourly warehouse employees for time spent walking from the warehouse entrance to their assigned work locations, and from their assigned work locations to the exit of the warehouse;

c. Whether Target required hourly warehouse employees to clock in and clock out at or near their assigned work location;

d. Whether Target failed to pay hourly warehouse employees for their time spent walking from the warehouse entrance to their assigned work locations, and from their assigned work locations to the exit of the warehouse;

e. Whether the hourly warehouse employees were paid promised wages for all hours worked as required by the NYLL;

f. Whether the hourly warehouse employees were paid at least the minimum wage for all hours worked as required by the NYLL;

g. Whether the hourly warehouse employees were paid at the overtime premium rate for all hours worked over 40 in a workweek; and

h. The nature and extent of class-wide injury and the measure of damages for those injuries.

79. *Typicality*: Plaintiffs' claims are typical of the members of the Class because members of the proposed Class have all been subject to the same unlawful practices of Defendant, and their claims arise out of these same practices.

80. Plaintiffs and the other hourly warehouse employees have the same statutory rights under the NYLL and are all non-exempt employees within the meaning of the NYLL.

81. Plaintiffs and the other hourly warehouse employees suffered similar types of damages.

82. Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs were hourly warehouse employees who worked for Defendant and suffered the same labor law violations as other warehouse employees.

83. Plaintiffs' interests are co-extensive with the interests of the Class members; they have no interest adverse to the Class members.

84. Defendant acted or refused to act on grounds generally applicable to the Class, therefore making final injunctive relief and declaratory relief appropriate to the Class as a whole.

85. *Adequacy*: Plaintiffs will fairly and adequately represent the interests of the Class members. Their interests do not conflict with the interests of the members of the Class they seek to represent.

86. Plaintiffs understand that, as class representatives, they assume responsibility to the Class to represent its interests fairly and adequately.

87. Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why Plaintiffs and their counsel will not vigorously pursue this matter.

88. *Superiority*: A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

89. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct.

90. Further, it would be difficult for members of the Class to effectively obtain individual redress for the wrongs done to them. If individual actions were to be brought by each

member of the Class, the result would be a multiplicity of actions, creating hardships for members of the Class, the Court, and Defendant.

91. Individual litigation also creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the judicial system.

92. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

93. This case does not present individualized factual or legal issues that would render a class action difficult.

94. Plaintiffs intend to send notice to all members of the Class to the extent required by Fed. R. Civ. P. 23(c)(2). The names and addresses of the Class members are available from Defendant's records.

**FIRST CAUSE OF ACTION**
**New York Labor Law Claims**
**As to Plaintiffs and the Class**
**(Unpaid Minimum Wages)**

95. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

96. Defendant willfully failed to pay Plaintiffs and other similarly situated hourly warehouse employees for pre- and post-shift time spent walking and waiting at security checkpoints within the warehouse, in violation of NYLL Article 19 (NYLL §§ 650, 652), NYLL Article 6 (NYLL § 193), and their implementing regulations.

97. Accordingly, Defendant willfully failed to pay Plaintiffs and other similarly situated warehouse employees the state minimum wage for all hours worked, in violation of NYLL § 652 (requiring payment of minimum wage for "each hour worked").

98. While such pre- and post-shift time is not required to be paid under the Portal-to-Portal Act's amendment to the federal Fair Labor Standards Act, New York did not adopt that amendment when it enacted the New York Labor Law in 1960—and has not adopted it since.

99. Indeed, under the implementing regulations of Article 19, "The minimum wage shall be paid for the time an employee is permitted to work, *or is required to be available for work at a place prescribed by the employer*, *and shall include time spent in traveling to the extent that such traveling is part of the duties of the employee*." 12 NYCRR 142-2.1(b) (Miscellaneous Wage Order for Miscellaneous Industries and Occupations - Basic minimum hourly wage rate and allowances) (emphasis added). As such, time spent walking from a warehouse entrance to an assigned time clock at the beginning of a shift, and from an assigned time clock to a warehouse exit at the end of a shift, is part of the "hours worked" for wage workers in New York. And in a New York State DOL Opinion letter, the Department confirmed that the phrase "time spent in traveling to the extent that such traveling is part of the duties of the employee" in 12 NYCRR § 142-2.1 "applies to all employees, *regardless of the extensiveness of their travel*, and requires the payment of wages for *any travel* that is part of the duties of the employee." NYSDOL Op. Ltr. RO-09-0170 (emphasis added).

100. As described above, Target required Plaintiffs and other hourly warehouse employees to arrive at the warehouse, be present in the warehouse, and to travel long distances in the warehouse prior to the start of their shift before clocking in at their assigned work locations. Accordingly, Plaintiffs and other hourly warehouse employees were required to be paid for this time under the New York Labor Law, but Defendant failed to pay them *at all* for this time worked.

101. In addition, Target has been on notice that it is required to pay such pre-shift and

post-shift walking time based on rulings in several other states with wage and hour statutes similar to New York that also did not adopt the Portal-to-Portal Act.

102. Defendant's failure to pay the required minimum wages as set forth above was willful within the meaning of NYLL §§ 198 and 663.

103. Plaintiffs and the Class are entitled to their unpaid minimum wages mandated by the NYLL, plus an additional 100 percent as liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with NYLL §§ 198 and 663.

104. Plaintiffs also seek, and are entitled to, attorneys' fees, costs, and interest.

**SECOND CAUSE OF ACTION**
**New York Labor Law Claims**
**As to Plaintiffs and the Class**
**(Unpaid Overtime Wages)**

105. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

106. As Plaintiffs and other similarly situated hourly warehouse employees regularly worked 40 hours in a single work week, Defendant willfully failed to pay Plaintiffs and other similarly situated hourly warehouse employees overtime pay at a rate of at least one-and-a-half times their regular hourly rate for every hour they worked above 40 hours in a single work week, as required under NYLL § 652 and its accompanying regulations/wage orders.

107. When unpaid pre- and post-shift time spent walking and waiting at security checkpoints within the warehouse was part of a workweek in which Plaintiffs and other similarly situated hourly warehouse employees worked 40 or more hours in a workweek, Target was required to pay Plaintiffs and other similarly situated workers for this pre- and post-shift time at the overtime premium rate.

108. With respect to the overtime rate, New York's implementing overtime regulations make clear that overtime is subject to certain exemptions "of sections 7 and 13 of the Fair Labor Standards Act," but do not cite or otherwise reference the exemptions set out in the Portal-to-Portal Act—an amendment to the FLSA codified at 29 U.S.C. § 251 *et seq.*—at all. 12 NYCRR 142-2.2 (Miscellaneous Wage Order for Miscellaneous Industries and Occupations – Overtime rate).

109. Defendant's failure to pay the required overtime wages as set forth above was willful within the meaning of NYLL §§ 198 and 663.

110. Plaintiffs and the Class are entitled to their unpaid wages mandated by the NYLL, plus an additional 100 percent as liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with NYLL §§ 198 and 663.

111. Plaintiffs also seek, and are entitled to, attorneys' fees, costs, and interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law Claims**
**As to Plaintiffs and the Class**
**(Unpaid Promised Wages)**

112. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

113. In failing to pay Plaintiffs and other similarly situated hourly warehouse workers for their pre- and post-shift time spent walking and waiting in security lines, Defendant willfully failed to pay Plaintiffs and other similarly situated hourly warehouse employees promised wages for all hours worked, in violation of Article 6 of the Labor Law (NYLL §§ 193 and 198), which only permits deductions from wages for certain enumerated purposes, and such deductions as are authorized in writing and for the benefit of the employee.

114. Courts in New York have long recognized that the failure to pay promised wages at all constitutes wage theft, as a full deduction from the wages of an employee.

115. In addition, as recent amendments to Article 6 have reaffirmed, "There is no exception to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements." NYLL § 193(5) and 198(3).

116. Defendant's failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 193 and 198.

117. Plaintiffs and the Class are entitled to their unpaid promised wages mandated by the NYLL, plus an additional 100 percent as liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with NYLL §§ 193 and 198.

118. Plaintiffs also seek, and are entitled to, attorneys' fees, costs, and interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law Claims**
**As to Plaintiffs and the Class**
**(Wage Statement Violations)**

119. Plaintiffs reallege and reincorporate by reference the foregoing allegations as if fully set forth herein.

120. Defendant failed to provide Plaintiffs and other similarly situated hourly warehouse employees with an accurate wage statement with every payment of wages which provided all of the information required under NYLL § 195(3).

121. Because Defendant failed to comply with the statute's requirement to provide wage statements that accurately reflect all time worked, the wage theft complained of here—Defendant's failure to pay for all pre- and post-shift time spent walking and waiting in security lines—was not prevented and was allowed to persist.

122. Because the wage theft was not prevented, Plaintiffs and similarly situated hourly warehouse employees were denied the opportunity to spend or invest their legally-owed wages.

123. Because Defendant failed to comply with the statute's requirements, Plaintiffs and the Class were delayed in learning about their legal right to be paid for all time worked and unable to advocate for their proper wages, and were therefore delayed in acting on their legal right to recover their stolen wages. In addition, at least some wage theft claims have been extinguished by the statute of limitations.

124. For Defendant's violation of NYLL § 195(3), Plaintiffs and others similarly situated are entitled to $250 for each day of work in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to NYLL § 198(1-d).

125. Plaintiffs also seek, and are entitled to, attorneys' fees, costs, and interest.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, on behalf of themselves and the Class, demand a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:

(a) Determining that this action may proceed as a class action under Fed. R. Civ. P. 23(b)(3);

(b) Designating Plaintiffs as representatives for the Class and designating Plaintiffs' counsel as counsel for the Class;

(c) Declaring that Defendant committed violations of the NYLL;

(d) Permanently enjoining Defendant from further violations of the NYLL;

(e) Awarding damages to Plaintiffs and the Class as provided by the NYLL;

(f) Awarding reasonable attorneys' fees and costs as provided by law; and

(g) Granting further relief, in law or equity, as this Court may deem appropriate and just, including all relief authorized by the NYLL.

DATED: November 17, 2025
New York, New York

**KATZ BANKS KUMIN LLP**

Hugh Baran (he/him)
Elena Rodriguez Anderson (she/her)
Katz Banks Kumin LLP
111 Broadway, Suite 1403
New York, NY 10006
(646) 759-4501
baran@katzbanks.com
anderson@katzbanks.com

Jessica Westerman (she/her)
Katz Banks Kumin LLP
11 Dupont Circle NW, Suite 600
Washington, DC 20036
(202) 299-1140
westerman@katzbanks.com

**WINEBRAKE & SANTILLO, LLC**

Deirdre Aaron (she/her)
Peter Winebrake (he/him)
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, Pennsylvania 19025
(215) 884-2491
daaron@winebrakelaw.com
pwinebrake@winebrakelaw.com