**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JEANNA KRATZERT, NEIL MOSHER, and JON KARAFFA, individually and on behalf of all others similarly situated,

*Plaintiffs*,

1:25-cv-01171 (AMN/DJS)

v.

TARGET CORPORATION,

*Defendant*.

---


| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **KATZ BANKS KUMIN LLP**<br>111 Broadway, Suite 1403<br>New York, New York 10006 | **HUGH BARAN, ESQ.**<br>**ELENA RODRIGUEZ ANDERSON, ESQ.** |
| 11 Dupont Circle NW, Suite 600<br>Washington, D.C. 20036 | **JESSICA WESTERMAN, ESQ.** |
| **WINEBRAKE & SANTILLO, LLC**<br>715 Twining Road, Suite 211<br>Dresher, Pennsylvania 19025<br>*Attorneys for Plaintiffs* | **DEIRDRE AARON, ESQ.**<br>**PETER WINEBRAKE, ESQ.** |
| **NILAN JOHNSON LEWIS PA**<br>244 Fifth Avenue, Suite F276<br>New York, New York 10001 | **JOSEPH G. SCHMITT, ESQ.**<br>**MARK J. GIROUARD, ESQ.**<br>**COURTNEY L. BURKS, ESQ.** |
| **PAUL HASTINGS LLP**<br>101 California Street, 48th Floor<br>San Francisco, California 94111 | **JEFFREY D. WOHL, ESQ.** |
| 200 Park Avenue<br>New York, New York 10166<br>*Attorneys for Defendant* | **SARA B. TOMEZSKO, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs Jeanna Kratzert, Neil Mosher, and Jon Karaffa (collectively, "Plaintiffs") bring this putative class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"), against defendant Target Corporation ("Defendant"), alleging violations of the New York Labor Law. Dkt. No. 32 ("Amended Complaint"); *see also* Dkt. No. 1.

Presently before the Court is Defendant's motion to dismiss the Amended Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Rule 12"). Dkt. No. 33 ("Motion"). Plaintiffs filed an opposition, Dkt. No. 36, and Defendant filed a reply in further support, Dkt. No. 41. Both parties also moved for leave to file supplemental authority. Dkt. Nos. 42 (citing *Del Rio v. Amazon.com Services, Inc.*, 354 Conn. 151 (2026)); 44 (opposing); 45 (citing *Johnson v. Amazon.com Services*, LLC, 2026 IL 132016); 46 (opposing); 47 (citing *Bettis v. Amazon.com Services LLC*, No. 24-CV-07563-LDH-JAM, 2026 WL 880208 (E.D.N.Y. Mar. 31, 2026)); 48 (opposing); 49 (citing New York Dep't Lab. Ltr. Re: Req. for Op., Comp. for Period Between Reporting Time and "Clocking" Time (Sept. 9, 1997)); 50 (opposing).[1] On Plaintiffs' request, the Court heard oral argument on the Motion on August 25, 2026. For the reasons set forth below, the Court grants the Motion.

## II. BACKGROUND

### A. The Parties

Defendant is a Minnesota corporation with its principal place of business in Minnesota. Dkt. No. 32 at ¶ 13. Defendant is a retailer that employs thousands of workers across the United

[1] As the Court indicated during the August 25, 2026 hearing, all such motions for leave are granted.

States in distribution centers, or warehouses, to support its online and in-person retail operations. *Id.* at ¶ 1. Defendant operates two such warehouses in Wilton, New York and Amsterdam, New York. *Id.* at ¶ 2.

Plaintiffs are current and former employees at Defendant's Wilton and Amsterdam locations who work or worked as warehouse workers variously in Defendant's shipping, inbound, and outbound departments. *Id.* at ¶¶ 10-12.

**B. Plaintiffs' Factual Allegations**

Plaintiffs allege that Target has failed to pay Plaintiffs and similarly-situated employees for all the time they are required to be present in Defendant's warehouses because Plaintiffs must walk from a security checkpoint at the entrance to their assigned departments—in some cases up to half a mile—before they may "clock in" and begin to receive compensation. *Id.* at ¶ 3. Plaintiffs allege that Defendant failed to compensate them for their time spent walking to and from security checkpoints at its warehouse entrances to their assigned work areas. *Id.* at ¶ 4. They contend that this walking time—ranging from three or four minutes in each direction for certain of Plaintiff Kratzert's shifts, to ten or fifteen minutes in each direction per shift for Plaintiff Karaffa, *id.* at ¶¶ 38-41, 45-48—must be compensated pursuant to New York State's minimum wage, overtime, and promised wage statutes, and should have been included in their statutorily-mandated wage statements, *id.* at ¶¶ 5, 6, 52; *see also* Dkt. No. 37.

**C. Plaintiffs' Legal Claims**

Based on these allegations, Plaintiffs assert four causes of action under New York State labor law ("NYLL"): (i) failure to pay minimum wages in violation of NYLL §§ 650, 652, 193, and implementing regulations, Dkt. No. 32 at ¶¶ 95-104; (ii) failure to pay overtime wages in violation of NYLL § 652 and implementing regulations, *id.* at ¶¶ 105-111; (iii) failure to pay

promised wages in violation of NYLL §§ 193 and 198, *id.*at ¶¶ 112-118; and (iv) failure to provide accurate wage statements in violation of NYLL § 195(3), *id.* at ¶¶ 119-125.

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

## IV. DISCUSSION

In New York, two statutory schemes govern the obligations that employers owe to their workers: the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), as amended by the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.* (the "PPA"), and the NYLL. Although Plaintiffs do not purport to bring any claims under federal law, the interaction of these statutes is nonetheless critical to the disposition of their state law claims.

### A. The FLSA and the PPA

Enacted in 1938, the FLSA sets a floor for worker protection, including setting a minimum wage and a forty-hour workweek threshold for overtime compensation, and providing for a private right of action to recover backpay for owed compensation. *See* 29 U.S.C. § 206 (establishing federal minimum wage); § 207 (establishing a forty-hour workweek threshold for overtime compensation and various exceptions and exemptions); § 213 (establishing further exemptions to minimum wage and overtime requirements); § 216(b) (providing for a private right of action to recover unpaid minimum wages and overtime compensation).

Shortly after Congress enacted the FLSA, the Supreme Court issued three landmark decisions interpreting certain of its provisions as requiring minimum and overtime compensation for the time workers spent traveling within their employer's facility to their assigned work locations. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691 (1946) (analyzing whether employee time spent "walking to work on the employer's premises, following the punching of time clocks," constitutes "working time within the scope of [Section] 7(a)" of the FLSA); *Tenn. Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 597 (1944) ("Accordingly we view Sectio[n] 7(a) . . . of the [FLSA] as necessarily indicative of a Congressional intention to guarantee [h]igher regular or overtime compensation for all actual work or employment."); *Jewell Ridge*

*Coal Corp. v. Loc. No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945) (conclusion that intra-facility travel within employer's mines qualified as work was the "only method of achieving the plain design of Section 7(a).").

These Supreme Court cases led to a flood of litigation as workers around the nation brought similar claims for backpay. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31-32 (2014). In 1947, Congress enacted the PPA, explicitly abrogating these cases and foreclosing future recovery for overtime claims based on intra-facility travel time under federal law. *Id.* at 32; *see also* 29 U.S.C. § 251 *et seq.*

The parties agree that Plaintiffs' claims are not cognizable under the FLSA, as amended by the PPA. *See* Dkt. No. 32 at ¶ 5 n.1, 98; Dkt. No. 33-1 at 6; *see also* 29 U.S.C. § 254(a)(1) (excluding from the FLSA's minimum wage guarantees time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which [the] employee is employed to perform" and on "activities which are preliminary to or postliminary to said principal activity or activities"); *Integrity Staffing Sols., Inc.* 574 U.S. at 29 (finding that the FLSA, as amended by the PPA, did not require employers to compensate time spent in security screening while leaving a warehouse). Nevertheless, states may exceed the floor that the federal scheme establishes, *see* 29 U.S.C. § 218; Dkt. No. 41 at 2, and Plaintiffs urge that New York has done so with respect to, *inter alia*, the scope of work subject to state minimum wage and overtime requirements, Dkt. No. 36 at 9 (citing *Cedeno v. Able Health Care Serv., Inc.*, 2019 NY Slip Op 33624(U), at *2 (Sup. Ct. N.Y. Cnty. Dec. 11, 2019) ("New York has availed itself of the opportunity" to go above the FLSA's minimum standards with respect to the minimum wage)).

### B. The NYLL and the Miscellaneous Wage Order

The NYLL independently provides protections for workers, including a minimum wage, overtime compensation scheme, and private right of action for backpay. *See* N.Y. Lab. L. § 650 (declaring that "minimum wage standards shall be established and maintained" and declaring the "policy of the state of New York" that the insufficiency of certain wages be "eliminated as rapidly as practicable"); § 652 (establishing a scheme of minimum wages); § 193 (forbidding employers from "mak[ing] any deduction from the wages of an employee," subject to certain exceptions); § 195 (requiring employers to furnish and maintain records of employee compensation); § 198 (establishing a private right of action for employees to recover from their employers back wages accrued during the "six years previous to the commencing of such action" and certain other costs). The statute has undergone several decades of revision, amendment, and re-enactment. In its current form, the NYLL delegates to the New York State Department of Labor ("NYSDOL") the authority to issue regulations necessary to carry out the NYLL's minimum wage and overtime provisions. N.Y. Lab. L. § 21(11). As relevant here, in 1960 the NYSDOL promulgated the Minimum Wage Order for Miscellaneous Industries and Occupations (the "Miscellaneous Wage Order"), codified as 12 N.Y.C.R.R. § 142-2.2. Amendments to the NYLL have consistently provided that "[t]he minimum wage orders issued prior to the effective date of [the amendment] shall remain in full force and effect, except as modified in accordance with the provisions of [the NYLL]," *see* N.Y. Lab. L. § 652(2), and the NYSDOL has similarly iterated the Miscellaneous Wage Order, such that it now covers most New York workers, *see Almonte v. 437 Morris Park, LLC*, No. 14 CIV. 5951 (KPF), 2015 WL 7460019, at *3 (S.D.N.Y. Nov. 24, 2015).

At issue here are two provisions of Subpart 142-2 of the Miscellaneous Wage Order, which govern Plaintiffs' compensation. *See* Dkt. No. 33-1 at 1; Dkt. No. 36 at 1.

Section 142-2.1 in its current form provides a matrix of minimum hourly wages applicable during various years in the past decade, 12 N.Y.C.R.R. § 142-2.1(a), and mandates that "[t]he minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent traveling to the extent that such traveling is part of the duties of the employee," *id.* § 142-2.1(b). Section 142-2.1 includes two references to federal law, first recognizing that federal law may establish a higher floor of wages that must control, *id.* § 142-2.1(a)(4) (citing 29 U.S.C. § 206); and second incorporating federal limitations for meal periods and sleep times as to home care aides who work a shift of 24 hours or more, *id.* § 142-2.1(b) (citing 29 C.F.R. §§ 785.19, 785.22).[2]

Section 142-2.2 draws more heavily from federal statute, providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. § 201 *et seq.*, the Fair Labor Standards Act of 1938, as amended," subject to certain exceptions not relevant to this dispute.[3]

### C. Plaintiffs' Claims for Minimum Wage and Overtime Compensation

The core of the parties' dispute is therefore (1) whether the NYLL's references to certain provisions of the FLSA "as amended" also incorporate the PPA's limitations[4] on compensable

---

[2] Part 785 of 29 C.F.R. generally provides the "principles involved in determining what constitutes working time" for purposes of federal minimum wage and overtime law. 29 C.F.R. § 785.1.

[3] Section 7 of the FLSA similarly mandates overtime payment at a rate of one and one-half times the employee's regular rate, for work in excess of forty hours in a week, 29 U.S.C. § 207(a), subject to various industry-specific exemptions inapplicable here, *id.* at § 207(b), (f)-(q). It further defines the term "regular rate" to exclude certain compensation like gifts, paid time off, reimbursement for expenses, insurance benefits, and the like. *Id.* at § 207(e). Section 13 provides additional exemptions to the requirements of Section 7 and the federal minimum wage, again inapplicable here. *Id.* at § 213.

[4] For the sake of concision, the Court refers to the PPA's clarification that the FLSA does not affirmatively require employers to compensate certain activities as a 'limitation' on

hours; and if not, (2) whether Plaintiffs' walking time fits within the definition of work provided in the Miscellaneous Wage Order. Because the Court concludes that the NYLL incorporates the PPA's limitations, it need not address the latter question.

A federal court presented with a state law claim pursuant to diversity jurisdiction is "bound by the law of the state in which it sits." *Arizona Beverages USA, LLC v. Hanover Ins. Co.*, No. 23-1177, 2025 WL 2502552, at *2 (2d Cir. Sept. 2, 2025) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938)). Federal courts "'look to the state's decisional law, as well as to its constitution and statutes'" to resolve questions of state law. *Shugars v. Masonite Corp.*, No. 22-cv-1237 (MAD/ML), 2023 WL 7280902, at *5 (N.D.N.Y. Nov. 3, 2023) (quoting *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020)). Absent dispositive state authority on point, a federal court is "obligated to 'carefully . . . predict how the state's highest court would resolve the uncertainty or ambiguity.'" *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (alteration in original) (quoting *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir.1999)).

The "starting point in any case of interpretation must always be giving effect to the plain meaning of the statute or regulation." *People v. Hernandez*, 197 N.Y.S.3d 900, 902 (N.Y. Crim. Ct. 2023) (citing *Majewski v. Broadalbin-Perth Cent. School Dist.*, 91 N.Y.2d 577, 583 (1998)). New York courts take further guidance from the state administrative agency that promulgated the regulation at issue, so long as its interpretation does not "conflic[t] with the plain meaning of the promulgated language." *Visiting Nurse Serv. of New York Home Care v. New York State Dep't of Health*, 5 N.Y.3d 499, 506 (2005) (citing *Matter of 427 W. 51st St. Owners Corp. v. Division of Hous. & Community Renewal*, 3 N.Y.3d 337, 342 (2004)). A regulation composed of multiple

compensability. It should be noted, however, that nothing in the PPA *limits* an employer from incurring contractual obligations or otherwise choosing to compensate activities falling within the PPA's ambit. *See* 29 U.S.C. § 254(b); *see generally* Dkt. No. 32.

parts "'must be construed as a whole and . . . its various sections must be considered together and with reference to each other.'" *E. Acupuncture, P.C. v. Allstate Ins. Co.*, 873 N.Y.S.2d 335, 340 (2009) (quoting *People v. Mobil Oil Corp.*, 48 N.Y.2d 192, 199 (1979)). "[E]very word [in a statute or regulation] is to be given effect." *Bolden v. Blum*, 418 N.Y.S.2d 229, 231, *aff'd*, 48 N.Y.2d 946, 401 N.E.2d 217 (1979) (citing *Schrider v. National Distillers & Chem. Corp.*, 380 N.Y.S.2d 805 (1976)); *see also* N.Y. Stat. Law § 98.

While the parties have directed the Court to a handful of state court cases that have addressed the extent to which the NYLL and FLSA overlap, *see* Dkt. No. 33-1 at 9-10 (citing, *inter alia*, *Scott Wetzel Servs. Inc. v. N.Y. State Bd. of Indus. Appeals*, 252 A.D.2d 212, 213 n.1 (N.Y. App. Div. 1998)); *id.* at 14-15 (citing *Henix v. Liveonny, Inc*., 2021 WL 127046, at *5–6 (N.Y. Sup. Ct. Jan. 13, 2021)); Dkt. No. 36 at 9 (citing, *inter alia*, *Cedeno*, 2019 NY Slip Op 33624(U), at *1), the Court is unaware of controlling authority from the New York State Court of Appeals, nor any other state court, addressing the precise issue before the Court. The Court accordingly begins with the text of the regulations at issue.

**1. Section 142-2.1**

As noted above, Section 142-2.1 provides a straightforward explanation of the scope of hours for which employers must provide the minimum wage under the NYLL. *See* Section IV(B), *supra*; 12 N.Y.C.R.R. § 142-2.1(b). In delineating the time for which the minimum wage must be paid, the NYSDOL utilized language distinct from the PPA's "principal activities" rule and its preliminary and postliminary carve-outs. *Compare* 12 N.Y.C.R.R. § 142-2.1(b) ("The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer . . . .") *with* 29 U.S.C. § 254(a)(2) ("no employer shall be subject to any liability or punishment under the [FLSA], as amended, . . . on account of the

failure of such employer to pay an employee minimum wages . . . [for] walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and . . . activities which are preliminary or postliminary to said principal activity or activities"). It nevertheless incorporated a narrow set of federal exclusions to the minimum wage requirement through explicit reference to two federal regulations that implement the FLSA. 12 N.Y.C.R.R. § 142-2.1(b) (citing 29 C.F.R. §§ 785.19, 785.22). The text of this Section suggests that the NYSDOL was aware of the FLSA and its implementing regulations when it set New York's minimum wages, and that it chose to incorporate only two specific provisions of that federal law into its minimum wage regulation.

**2. Section 142-2.2**

Section 142-2.2, meanwhile, draws heavily from federal law, though the parties dispute just how much of the FLSA is incorporated into the Miscellaneous Wage Order. *See* Section IV(B), *supra*; 12 N.Y.C.R.R. § 142-2.2. Defendant urges that Section 142-2.2 is limited by the PPA because Section 142-2.2 incorporates into New York law Sections 7 and 13 of the FLSA, as amended, and the PPA amends Section 7. Dkt. No. 33-1 at 9; Dkt. No. 41 at 1. Plaintiffs counter that NYSDOL's reference to Sections 7 and 13 serves to incorporate only "specific categories of overtime-exempt employees," which are "not amended by the PPA." Dkt. No. 36 at 11-12.

To resolve this dispute, the Court begins with the regulation's plain text. *See Majewski*, 91 N.Y.2d at 583. Plaintiffs are correct that Section 142-2.2 refers to two specific sections of the FLSA, and this deliberate drafting choice counsels against reading a wholesale adoption of the FLSA as amended by the PPA into the Miscellaneous Wage Order. Nevertheless, the breadth of the "manner and methods" of Section 7, read in the historical context of Section 142-2.2's drafting,

should not be understated. After the FLSA was first enacted, the Supreme Court was confronted thrice over with questions of what constitutes "working time within the scope of [Section] 7(a)." *Anderson*, 328 U.S. at 691; *see also Tenn. Coal, Iron & R. Co.*, 321 U.S. at 597; *Jewell Ridge Coal Corp.*, 325 U.S. at 166-167. In each case the Court held that intra-facility travel time, analogous to Plaintiffs' walking time, constituted work within the meaning of Section 7. *See Battaglia v. Gen. Motors Corp.*, 169 F.2d 254, 258 (2d Cir. 1948) (these cases all "constru[ed] [S]ection 7 as to include time spent in so-called portal to portal activities in the '[workweek]' of employees"); *Anderson*, 328 U.S. at 691 ("But the time necessarily spent by the employees in walking to work on the employer's premises . . . was working time within the scope of [Section] 7(a)."); *Tenn. Coal, Iron & R. Co.*, 321 U.S. at 600 ("[T]he facts relating to underground travel in ore mines leaves no uncertainty as to its character as work."); *Jewell Ridge Coal Corp.*, 325 U.S. at 166 ("[U]nderground travel in petitioner's two mines is work and . . . should be included within the workweek for purposes of Section 7(a)."). These are precisely the decisions that prompted Congress to amend the FLSA, via the PPA. *See Battaglia*, 169 F.2d at 262 (2d Cir. 1948) (these cases served to "creat[e] the conditions Congress undertook to remedy, as it expressly stated in [S]ection 1(a) of the [PPA]."). The question of what activities constitute work that must be compensated is therefore integral to the "manner and methods" of calculating a forty-hour workweek under Section 7. 12 N.Y.C.R.R. § 142-2.2; *see* 29 C.F.R. § 785.1 (maximum hours threshold provided in Section 7 necessitates principles to "determin[e] what constitutes working time.").

Plaintiffs counter that the notice of proposed rulemaking for Section 142-2.2 explicitly asserts that the purpose of the amendment that added the reference to Sections 7 and 13 was to "modify 'all current wage orders to require an overtime rate of one and one half times the regular

hourly wage, subject to all the exemptions set forth under Sections 7 and 13 of the [FLSA], as amended, except those exemptions set forth in Section 13(a)(2) and 13(a)(4).'" Dkt. No. 36 at 7-8 (quoting Dkt. No. 37-12 (N.Y. Register (Oct. 1, 1986) at 10-11)) (alteration in original). Whatever the NYSDOL's professed intention at the time it proposed these changes, however, the Miscellaneous Wage Order as promulgated refers not only to the "exemptions," but also the "manner and methods" provided in Sections 7 of the FLSA, as amended. 12 N.Y.C.R.R. § 142-2.2. The Supreme Court interpreted, and Congress amended, Section 7 some four decades before the NYSDOL added the relevant language to the Miscellaneous Wage Order. The Court must presume that the NYSDOL was aware of Section 7's and the PPA's historical context, and that if the Department intended only to incorporate its *exemptions*, it would have constrained its revisions to the same language it used in its own proposal. The additional language included in the final Miscellaneous Wage Order must be given effect, and its effect is to incorporate Section 7, as amended by the PPA. *See Bolden*, 418 N.Y.S.2d at 231 (When interpreting a statute, "every word is to be given effect.").

This reading of Section 142-2.2 of the Miscellaneous Wage Order, while consistent with the FLSA, nevertheless presents a conflict with the interpretation of Section 142-2.1 discussed above. Assuming *arguendo* that Plaintiffs' walking time would otherwise be compensable under the NYLL, the Court's analysis thus far suggests that these Sections would require Defendant to pay minimum wage for their walking time, but exclude the same time from the calculus for purposes of overtime compensation. *See Bettis*, 2026 WL 880208 at *7. This inconsistency strikes the Court as unlikely to have been NYSDOL's intent in promulgating these Sections. Reading the two Sections in harmony, the only way to give effect to Section 142-2.2's incorporation of Section 7, as amended, while avoiding an absurd result, is to find that NYSDOL intended to

incorporate the limitations on compensability found in Section 7 of the FLSA, as amended by the PPA, into the Miscellaneous Wage Order generally. The Court therefore finds that the Miscellaneous Wage Order does not require Defendant to compensate Plaintiffs' walking time.[5]

**3. NYSDOL's Interpretations**

The parties have collectively directed the Court to six Opinion Letters authored by NYSDOL's Counsel's Office to support their positions with respect to the intent behind the Miscellaneous Wage Order. *See* Dkt. Nos. 33-3 ("January 2009 Letter"); 33-4 ("March 2009 Letter"); 33-5 ("March 2010 Letter"); 33-6 ("May 2010 Letter"); 33-7 ("August 2010 Letter"); 49-1 ("September 1997 Letter"). Plaintiffs further cites a decision by the New York State Industrial Board of Appeals. *See* Dkt. No. 36 at 17-18 (quoting *Fred Barthelman III v. Comm'r of Lab.*, PR 14-114 (Ind. Bd. of Appeals, Dec. 13, 2017)). These administrative pronouncements indicate that the Court's interpretation of the Miscellaneous Wage Order accords with NYSDOL's intent and the general practice within the state of New York and reinforce the Court's conclusion that Plaintiffs' walking time need not be compensated.

---

[5] This conclusion accords with the various New York state and federal district court opinions that the parties have cited, which resolved similar but distinguishable questions of law. For example, the court in *Henix*, in considering whether the NYLL requires compensation for tissue recovery specialists' time spent on call and traveling to various job sites, noted that the NYSDOL "interprets the language of the [Miscellaneous Wage Order] 'in line with the federal regulations regarding travel time under the Fair Labor Standards Act'" in rejecting the plaintiffs' claims. 2021 WL 127046, at *5 (quoting *Andryeyeva v. New York Health Care, Inc.*, 33 NY3d 152, 174 (2019)). And similarly, in *Beecher v. TWC Admin. LLC*, the court found that cable field technicians' commutes from their homes to their first field assignment of each day and from their final assignment back to their homes was not compensable, because the "NYLL follows the FLSA with respect to whether time commuting to and from work is compensable" in those circumstances. No. 15-CV-00154-WMS-JJM, 2016 WL 11113685, at *6 (W.D.N.Y. Aug. 22, 2016). Both cases pertained to time spent away from the respective employers' premises, and the plaintiffs in those matters do not appear to have challenged the propriety of the NYSDOL's practice of interpreting the Miscellaneous Wage Order with reference to federal law, as Plaintiffs do here. The decisions nevertheless indicate the prevailing interpretation of New York's Miscellaneous Wage Order to date.

**a. NYSDOL Opinion Letters**

Plaintiffs note that certain of the Opinion Letters confine their decisions to the facts presented, all of which Plaintiffs contend are distinguishable from the instant case. Dkt. No. 36 at 20 (first citing Dkt. Nos. 33-7; 33-6; 33-3; and then citing *Marin v. Apple-Metro, Inc.*, No. 12-CV-5274 (ENV/CLP), 2020 WL 6157011, at *11 (E.D.N.Y. Oct. 21, 2020)). The Court agrees that the Opinion Letters' persuasive value turns on the similarity of the issues presented but notes that their limited scope does not preclude the Court from nevertheless considering their conclusions. *See, e.g.*, *Andryeyeva*, 33 N.Y.3d, 167 (analyzing the March 2010 Letter and a "long line of official statements by DOL" as instructive as to the Miscellaneous Wage Order).

The January 2009, March 2009, March 2010, May 2010, and August 2010 letters specifically address questions about the application of Section 142-2.1. *See* Dkt. No. 33-3; Dkt. No. 33-4; Dkt. No. 33-5 at 3-4; Dkt. No. 33-6; Dkt. No. 33-7 at 1-2.

The August 2010 Letter addressed, *inter alia*, an employer's obligation to an employee on a "trip to another store outside of the employee's usual location." Dkt. No. 33-7 at 2. The NYSDOL noted that the facts given were insufficient to provide a complete answer but directed the recipient to "consult federal regulations 29 C.F.R. § 785.33 *et seq.* for more information . . . ."[6] *Id.*; *see also Henix*, 2021 WL 127046, at *5 (relying on, *inter alia*, the August 2010 Letter for insight into the scope of the Miscellaneous Wage Order); *Beecher*, 2016 WL 11113685, at *6

[6] Section 785.33 is the introductory Section which introduces the Subpart of Part 785 that addresses the compensability of travel time. Notably, the Section immediately subsequent to 29 C.F.R. § 785.33 addresses the "[e]ffect of section 4 of the Portal-to-Portal Act," 29 U.S.C. § 254, including that "traveltime at the commencement or cessation of the workday which was originally considered as working time under the Fair Labor Standards Act (such as . . . walking from time clock to work-bench) need not be counted as working time" under the FLSA as amended by the PPA. 29 C.F.R. § 785.34 (first citing *Tenn. Coal, Iron & RR. Co.*, 321 U.S. 590 (1946) and then citing *Anderson*, 328 U.S. 690 (1946)) (additional citation omitted).

(same). In the May 2010 Letter, the NYSDOL considered a traveling technician's right to compensation for time spent traveling from a rented parking spot to the first stop of the day and similarly explained that NYSDOL interprets Section 142-2.1 "in line with the federal regulations for travel time." Dkt. No. 33-6 at 2 (citing 29 C.F.R. § 785.38); *see also Beecher*, 2016 WL 11113685, at *6 (relying on, *inter alia*, the May 2010 Letter for insight into the scope of the Miscellaneous Wage Order). The March 2009 Letter concerned a thirty-minute window of travel between job sites for employees working shifts at multiple locations. Dkt. No. 33-4 at 1. There, the NYSDOL noted that New York may "enforce state Labor Laws that benefit or protect employees to a greater degree than do the provisions of the Federal Law," *id.* at 1 (citing 29 U.S.C. § 218(a)); the Letter nevertheless cited federal regulation as instructive as to whether the travel time constituted working time, *id.* at 2 (citing 29 C.F.R. § 785.6); *see also Beecher*, 2016 WL 11113685, at *6 (relying on, *inter alia*, the March 2009 Letter for insight into the scope of the Miscellaneous Wage Order). Most tellingly, the January 2009 Letter addresses the question of whether NYSDOL follows the PPA in assessing compensability of travel time. Dkt. No. 33-3 at 1. The NYSDOL declined to "evaluate whether the applicable provisions of the [NYLL] are consistent with or in line with all of the provisions and regulations of the [PPA] under all circumstances," but referred the recipient to 29 C.F.R. § 785.35. *Id.* at 2. Taken together, the references in these letters to the federal regulations suggest that the Miscellaneous Wage Order, through Section 142-2.2's wholesale incorporation of the "manner and methods" of Section 7 of the FLSA, incorporates the PPA's limitations on compensability into Section 142-2.1, regardless of the latter Section's more circumscribed textual references. *Compare* Dkt. Nos. 33-3, 33-4, 33-6, and 33-7 *with* 12 N.Y.C.R.R. § 142-2.1 (incorporating exclusions in 29 C.F.R. §§ 785.19, 785.22 only).

The September 1997 Letter does not undercut this conclusion. *See* Dkt. No. 49-1. There, the NYSDOL addressed whether the NYLL required compensation for Yankee Stadium workers who were "required to report to work at a specified time," but nevertheless had to "report to management at one location, receive their work assignments, and report to the manager at their work location" before clocking in. *Id.* at 5. The NYSDOL concluded that "[o]nce an employer has directed an employee to report to work at a specified time, that employee is 'employed' and 'working' within the meaning of the [NYLL], and must be paid at least the minimum wage for all time during which such employee is required to remain on the employer's premises while waiting to report to such employee's actual work location." *Id.* The facts presented in the September 1997 Letter, while at first blush closely analogous to those in the Amended Complaint, nevertheless describe time compensable under the PPA because the Yankee Stadium employees were both "required to report to work at a specified time," and then had to report to management to receive their work assignments before they could be clocked in. *Id.* The NYSDOL's endorsement of compensation for the Yankee Stadium workers therefore provides no insight into whether the NYLL exceeds the floor set by the FLSA, as amended by the PPA, because the outcome reached in the September 1997 Letter accords with the requirements of federal law. *See, e.g.*, 29 C.F.R. § 785.38 ("Where an employee is required to report at a meeting place to receive instructions . . . the travel from the designated place to the work place is part of the day's work."). The September 1997 Letter is accordingly consistent with a conclusion that Section 142-2.1 incorporates the PPA's limitations. The Court is therefore unaware of any NYSDOL Opinion Letter suggesting that time subject to the PPA's limitations would nevertheless be compensable under the NYLL.

The Court concludes that the Opinion Letters, while not directly on point, support the Court's conclusion that the NYSDOL intended to import the PPA's travel compensability limitations into the minimum wage provisions as well as the overtime provisions of the Miscellaneous Wage Order.

**b. New York State Industrial Board of Appeals**

Plaintiffs further contend that the conclusion reached in *Fred Barthelman III v. Comm'r of Lab.* suggests that New York minimum wage law does not incorporate the PPA. PR 14-114 (Ind. Bd. of Appeals, Dec. 13, 2017).

The reasoning in *Fred Barthelman III* further buttresses the Court's conclusion regarding Section 142-2.1. There, the Industrial Board of Appeals found that the petitioner had to compensate employees' time spent driving to a parking area, walking to a barn where trucks and equipment were stored, and waiting for team members to arrive. *Id.* at *23-25. The Board reached this conclusion by analyzing the "FLSA's regulations regarding 'waiting time' when an employee is 'on duty.'" *Id.* at 24 (citing *Asoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003)). In particular, the Board cited 29 C.F.R. § 785.15, noting that the employees' waiting time was "short and unpredictable" and involved "waiting for assignments or other crew members." *Id.* This reasoning further establishes that Section 142-2.1 has been consistently read in the context of a wide range of federal regulations promulgated under the FLSA, despite it explicitly incorporating only the exclusions in 29 C.F.R. §§ 785.19 and 785.22. *Compare Fred Barthelman III*, PR 14-114 at *24 (applying 29 C.F.R. § 785.15 to determine requirements of Section 142-2.1) *with* 12 N.Y.C.R.R. § 142-2.1 (incorporating exclusions in 29 C.F.R. §§ 785.19, 785.22 only). Moreover, these facts show that *Fred Barthelman III* is distinguishable from the instant case. The Industrial Board of Appeals made clear that the employees there had already

"clocked in" at the place prescribed by their employer and had to be available for work when called upon, *Fred Barthelman III*, PR 14-114 at *24; Plaintiffs, meanwhile, are not yet "clocked in" during their walking time and do not allege that they are assigned or expected to be ready to perform work during that time, Dkt. No. 32 at ¶¶ 34-35.

The Court accordingly concludes that its interpretation of the Miscellaneous Wage Order accords with the Industrial Board of Appeals' approach to minimum wage and overtime compensability.

**4. Other State Statutes and Regulations**

The parties each direct the Court to various other states' labor laws to support their respective positions. *See, e.g.*, Dkt. No. 36 at 11, n.7 (collecting cases); Dkt. No. 41 at 2, 3-4, n.2 (collecting cases); Dkt. No. 42 (citing *Del Rio v. Amazon.com Services, Inc.*, 354 Conn. 151 (2026)); Dkt. No. 45 (citing *Johnson v. Amazon.com Services, LLC*, 2026 IL 132016).

To the extent that the Court has considered the law of jurisdictions other than New York,[7] these cases serve only to reinforce its analysis. The recent decisions of the supreme courts of Connecticut and Illinois are particularly instructive. In *Del Rio v. Amazon.com Services, Inc.*, Connecticut's highest court resolved that the PPA did not limit the compensability of employees' time spent passing through security screenings at the end of their shifts. 354 Conn. 151 (2026). Connecticut law, however, is readily distinguishable from the NYLL. Connecticut minimum wage and overtime law is governed by Sections 31-60 and 31-76b of the Connecticut General Statutes, and Section 31-60 additionally delegates to the Connecticut Labor Commissioner the power to

[7] *See 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 221, n.1 (2d Cir. 2021) ("[D]ecisions from other states and their interpretations under non-New York law" are "not binding on New York courts and do not prevent [the Court] from confidently predicting how the Court of Appeals would decide" the instant issue).

adopt regulations to carry out the purposes of the statute. *See* C.G.S.A. §§ 31-60; 31-76b. Across this entire scheme, the Court can discern only one reference to the FLSA: a narrow incorporation of the definition of "companionship services." C.G.S.A. § 31-76b(2)(A) (citing 29 U.S.C. § 201 *et seq.*); *see generally* C.G.S.A. §§ 31-60; 31-76b; Conn. Agencies Regs. § 31-60-1 *et seq.*

In *Johnson v. Amazon.com Services, LLC*, the Illinois Supreme Court similarly found that its state law did not incorporate the PPA's limitations. 2026 IL 132016. Analyzing the Illinois Minimum Wage Law, the *Johnson* court noted that the statute includes just four specific references to provisions of the FLSA, regulations promulgated thereunder, or both. *Id.* at ¶ 14 (citing 820 ILCS 105/4a). These references are to narrow paragraphs of Section 7 of the FLSA and to a federal regulation defining employment in a "bona fide executive, administrative or professional capacity." 820 ILCS 105/4a (citing 29 C.F.R. § 541.600; 29 U.S.C. § 207(b), (i), (k), and (o)).

Neither Connecticut nor Illinois includes the sweeping incorporation of Section 7 present in Section 142-2.2 of the Miscellaneous Wage Order. It is therefore unsurprising that the *Del Rio* and *Johnson* courts found that those states did not consequently incorporate the PPA's limitations. *See Del Rio*, 354 Conn. 151; *Johnson*, 2026 IL 132016; *see also Roberts v. State*, 253 Ariz. 259 (2022) (statutory reference to Section 7(k) only did not incorporate PPA); *In re Amazon.com, Inc.*, 667 Pa. 16 (2021) (statutory reference to Section 7(j) only did not incorporate PPA); *Amaya v. DGS Constr., LLC*, 479 Md. 515 (2022) (statutory reference to the FLSA that omitted the term "as amended" excluded the PPA and did not otherwise incorporate federal limitations on compensability); *Segura v. J.W. Drilling, Inc.*, 2015-NMCA-085, 355 P.3d 845 (similar). And Plaintiffs' cited case, *Vaccaro v. Amazon.com.dedc, LLC*, further bolsters the Court's conclusion. No. CV 18-11852 (FLW), 2020 WL 3496973 at *6 (D.N.J. June 29, 2020) (New Jersey's statute and regulations "do not cite to the section of the FLSA that was amended by the Portal-to-Portal

Act, *i.e.*, *Section 7*," and therefore do not incorporate the PPA) (emphasis added) (citing *Thomas v. Amazon.com Servs., Inc.*, 462 F. Supp. 3d 828, 835 (N.D. Ohio 2020)).

* * *

The Court accordingly finds that New York law does not require Defendant to compensate Plaintiffs' walking time and dismisses Plaintiffs' claims for unpaid minimum wages and overtime wages.

**D. Plaintiffs' Remaining Claims**

Defendant contends that Plaintiffs' causes of action for promised wages and noncompliant wage statements are coextensive with Plaintiffs' claims for minimum wage and overtime. Dkt. No. 33-1 at 20-21 (citing *Levion v. Societe Generale*, 503 F. App'x 62, 64 (2d Cir. 2012) (dismissing claims under NYLL § 193 where plaintiff failed to establish that omitted payments constituted wages owed under state law); *Chase v. MADICORP*, No. 623CV00436, 2024 WL 841266, at *5 (N.D.N.Y. Feb. 28, 2024) ("wage notice and pay statement claims similarly fail because of the [complaint]'s failure to state an overtime claim")). Plaintiffs offer no argument to the contrary. *See Worley v. Simon Meyrowitz & Meyrowitz, P.C.*, No. 23-187-cv, 2023 WL 8664375, at *3 (2d Cir. Dec. 15, 2023) (counseled party's partial response to a motion may constitute abandonment of unaddressed argument). Moreover, the Court agrees that the plain language of these statutes necessarily presupposes that the time at issue is compensable. *See* N.Y. Lab. L. §§ 193; 195.

As such, the Court dismisses Plaintiffs' claims for promised wages and noncompliant wage statements under NYLL §§ 193, 195, and 198.

### E. Leave to Amend

When a complaint has been dismissed, "[t]he court should freely grant leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may dismiss without leave to amend when amendment would be "futile" or would not survive a motion to dismiss. *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 491 (2d Cir. 2011). Plaintiffs suggest that, should the Court grant leave to amend, they are prepared to plead additional facts "to show their duties require that they walk from the entrance to their workstations," including that they must "follow specific routes, [] must walk (and cannot run) to their workstations, [] must observe other specific rules when walking in the warehouse[s]; and [] cannot effectively use the time for their own purposes." Dkt. No. 36 at 24, n.22. Here, Plaintiffs' proposed amendments would be futile because they do not address the defect in their claims—*i.e.*, Defendant is not required to compensate Plaintiffs for their walking time under the provisions of the FLSA, as amended, applicable under the NYLL. *See, e.g.*, *Florence v. Seggos*, No. 21-834, 2022 WL 2046078, at *3 (2d Cir. June 7, 2022) (summary order) (affirming dismissal without leave to replead where "there [wa]s no indication that Plaintiffs could provide any additional allegations to salvage the otherwise deficient . . . claims"); *Brady v. Ostrager*, 834 F. App'x 616, 619 (2d Cir. 2020) (summary order) (finding that "the district court correctly held that amendment would be futile" where plaintiff's claims were barred by relevant law).

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's motion to dismiss, Dkt. No. 33, is **GRANTED;** and the Court further

**ORDERS** that the Amended Complaint, Dkt. No. 32, is **DISMISSED with prejudice and without leave to amend;** and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules, and to close the case.

**IT IS SO ORDERED.**

Dated: September 16, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge